# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

GREGORY CLEMMONS,

      Petitioner,

:

Case No. 3:11-cv-465

:

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

    -vs-

WARDEN, Lebanon Correctional
  Institution,

:

      Respondent.

---

# REPORT AND RECOMMENDATIONS ON WARDEN'S MOTION TO DISMISS; DECISION AND ORDER ON PETITIONER'S MOTION FOR DISCOVERY AND TO EXPAND THE RECORD

---

This is a habeas corpus case brought *pro se* by Petitioner Gregory Clemmons to obtain relief from his conviction in the Montgomery County Common Pleas Court on the charge of rape of a minor under ten years of age for which he is serving a sentence of fifteen years to life imprisonment in Respondent's custody.

He pleads the following Grounds for Relief:

> **Ground One:** Insufficient evidence to support conviction violation 5th, 14th amendment.
>
> **Supporting Facts:** No physical evidence to support conviction, lack of substantial medical evidence, inconsistent testimony and perjured testimony, potential exculpatory DNA evidence not tested.
>
> **Ground Two:** Ineffective Assistance of Trial Counsel violating 5th, 6th, and 14th amendment.
>
> **Supporting Facts:** Counsel failed to object to prosecution

1

>misconduct for implying evidence not presented at trial; failed to file notice of alibi; failure to call witnesses with exculpatory testimony – witnesses home before testifying; failure to investigate and point out perjury of Det. Dix; failure to investigate faces [sic] of the case; failure to object to inadmissible evidence and testimony; failure to investigate law concerning rape shield law.
>
>**Ground Three:** Trial court erroneously found the 5 year old alleged victim competent to testify in violation of 5th and 14th amendment.
>
>**Supporting Facts:** Voir dire was conducted without defense counsel present, alleged victim was unable to recall the alleged incident on stand without considerable prompting, alleged victim routinely answered in the negative and had to be further prompted to answering. As such, the witness was not competent, violating 5th, 6th, and 14th Amendment.
>
>**Ground Four:** Ineffective assistance of appellate counsel 5th, 6th, 14th amendment violations.
>
>**Supporting Facts**: Appellate counsel failed to raise any of the ineffective assistance of trial counsel claims raised in the 26 B app and listed in ground two.
>
>**Ground Five:** The trial court erred in erroneously permitting the alleged victim's out of Court statements to be introduced in violation of the 5th, 6th, and 14th Amendment.
>
>**Supporting Facts**: Statements which were made to Dr. Williams which were not necessary for medical treatment but were in response to questions solely aimed at identifying the perpetrator violated Evid. R. 803 as Doctor Williams assumed the role of police investigator rather than medical specialist.

(Petition, Doc. No. 1, PageID 5-12.)

The case is before the Court on Respondent's Motion to dismiss the Petition as barred by the one-year statute of limitations in the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA")(Doc. No. 5). 28 U.S.C. §2244 (d) as adopted by AEDPA provides:

2

>  (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
>  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>  (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>  (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

## Procedural History

Defendant was indicted by the Montgomery County Grand Jury on one count of rape of a five-year-old girl on some date in 2007 before May 23, when the victim was first examined at the emergency room at Miami Valley Hospital. He was convicted by a jury at trial and appealed to the Second District Court of Appeals which affirmed the conviction May 1, 2009. *State v. Clemmons*, No. 22749, 2009-Ohio-2066, 2009 Ohio App. LEXIS 1739 (Ohio App. 2nd Dist. May

1, 2009). Clemmons took no direct appeal to the Ohio Supreme Court and his time to do so expired June 16, 2009, the forty-fifth day after judgment in the court of appeals.

Clemmons filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 on February 27, 2009. The Common Pleas Court dismissed the petition as untimely on August 12, 2009 (Motion to Dismiss, Doc. No. 5, Ex. 15, PageID 307-327). Judge Huffman notes that an Ohio Common Pleas Court does not have jurisdiction to adjudicate on the merits an untimely motion for post-conviction relief and makes specific findings of fact as to why the petition was late. *Id.* at PageID 311-312. Clemmons appealed and the court of appeals dismissed the appeal on January 25, 2010, based on Clemmons' failure to prosecute (Motion to Dismiss, Doc. No. 5, PageID 334). Clemmons took no appeal to the Ohio Supreme Court. An untimely application for post-conviction collateral relief is not "properly filed" and does not toll the statute of limitations. *Artuz v. Bennett*, 531 U.S. 4 (2000).

On July 23, 2009, Clemmons filed a timely application to reopen his direct appeal under Ohio R. App. P. 26(B). This filing did toll the statute. The court of appeals denied the application on September 24, 2009, and Clemmons appealed. However, the Ohio Supreme Court dismissed the appeal December 30, 2009. The Petition in this case was signed and delivered to prison authorities for mailing to the Court on December 16, 2011, almost two years later. Based on this procedural history, the Warden asserts the Petition is time-barred.

Clemmons' conviction became final on direct appeal on June 16, 2009. The statute began to run on that date and then was tolled when Clemmons filed his Application to Reopen under Ohio R. App. P. 26(B). It began to run again when that proceeding was finally dismissed on December 30, 2009. Thus Clemmons habeas petition is untimely unless he can excuse the later

4

filing.

**Claim of Actual Innocence**

Clemmons responds that his lateness in filing is excused by the fact that he is actually innocent. To prove his actual innocence, he attaches exhibits to his Response (Doc. No. 11) and he has also moved for additional discovery and to expand the record (Doc. No. 8).

In his Request for Additional Discovery (Doc. No. 8), Clemmons says (PageID 908) he will fully develop an equitable tolling argument – in addition to the actual innocence argument – when he files his memorandum in opposition to the motion to dismiss. In fact, he relies entirely on the actual innocence argument. *Cleveland v. Bradshaw*, ___ F.3d ___, 2012 U.S. App. LEXIS 18948 (6th Cir. 2012), treats actual innocence as a species of equitable tolling:

> In *Holland v. Florida*, 130 S.Ct. 2549, 177 L. Ed. 2d 130 (2010), the Supreme Court reiterated that equitable tolling based on attorney error is available only when a petitioner shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. *Id*. at 2562 (2010) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)). We recently explained in *Perkins v. McQuiggin*, 670 F.3d 665 (6th Cir. 2012), that the *Holland* decision did not alter our analysis in *Souter* and a petitioner claiming actual innocence (as opposed to attorney error) did not need to demonstrate reasonable diligence to be entitled to equitable tolling. 670 F.3d at 672-73, 676.

*Id.* at n.2, *15-16. Clemmons does not attempt to excuse his lateness under the more general equitable tolling standard, but relies on actual innocence alone.

Clemmons also does not rely on his application for post-conviction DNA testing to toll the

5

statute, but such a proceeding is not a collateral attack on the judgment in any event. In *Wall v. Kholi*, 562 U.S. ___, 131 S. Ct. 1278, 179 L. Ed. 2d 252 (2011), the Supreme Court unanimously held that collateral review means judicial review of a sentence in a proceeding that is not part of direct review. Ohio judges do not review sentences in post-conviction DNA application cases.

Actual innocence has been recognized by the Supreme Court as excusing procedural default in presenting a claim to the state courts. *Murray v. Carrier,* 477 U.S. 478 (1986). "A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime." *Sawyer v. Whitley,* 505 U.S. 333, 340 (1992). To come within the actual innocence exception to the required showing of cause and prejudice, a habeas petitioner must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. That is, the petitioner must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in the light of the new evidence he or she is tendering. In reaching this conclusion, the habeas court may need to make credibility determinations. *Schlup v. Delo*, 513 U.S. 298, 323-327 (1995), adopting standard from *Murray v. Carrier*, 477 U.S. 478 (1986).

In *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit extended the actual innocence exception from procedural default to the statutory time limitation in § 2244(d). That is, if a habeas petitioner can produce adequate proof that he is actually innocent, he need not file his petition within the time limits set by § 2244(d). Moreover, while the evidence must be new in the sense that it has never been presented in court before, it need not be newly-discovered in the exercise of due diligence, as would be required for new evidence in support of a motion for new trial or to come within the newly discovered evidence exception to 28 U.S.C. § 2244. *Freeman v.*

6

*Trombley*, 2012 U.S. App. LEXIS 10317 *13 (6th Cir. May 18, 2012), *citing Souter* and *Perkins v. McQuiggin*, 670 F.3d 665 (6th Cir. 2012).

Thus the Sixth Circuit case law requires us to focus on the strength of evidence of actual innocence rather than when it was discovered by Clemmons.  The relevant test requires the "evidence of innocence [to be] so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error; [if it is] the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims."   *Schlup v. Delo*, 513 U.S. 298, 316 (1995).   "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Supreme Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

Applying this standard, the Court turns to the evidence presented as attachments to Clemmons' Response (Doc. No. 11).

None of the evidence offered is new scientific exculpatory evidence.  The victim was taken to the hospital by her mother on May 23, 2007, when she complained of burning on urination, pain in her genital area, and a greenish vaginal discharge.  *Clemmons*, 2009-Ohio-2066, ¶ 2, 2009 Ohio App. LEXIS 1739.  Clemmons offers the laboratory results from testing done on the victim on May 24, 2007 (Ex. D. to Doc. No. 11), which he says shows she had a urinary tract infection, "rather than the result of rape" and that no test for sexual transmitted diseases was done "because the methodology was not FDA approved" (Response, Doc. No. 11, PageID 1019).   But

7

the State did not rely on these symptoms of which the victim complained to prove rape. The medical personnel at Miami Valley Hospital emergency room treated her with antibiotics, the standard treatment for urinary tract infection. She was examined five days later at the Care Clinic at Children's Medical Center which noted (Ex. A to Doc. No. 11) the treatment for urinary tract infection was having good effect. Their diagnosis of suspected sexual abuse was not based on the urinary tract infection, but on the abnormal condition of the victim's hymen.

The only other exhibit attached to the Response and adverting to scientific evidence is a letter (Ex. F to Doc. No. 11) from the Montgomery County Public Health District to the Ohio Public Defender saying they no longer have any records of Mr. Clemmons' AIDS testing and the tests done on him for other sexually transmitted diseases at the Montgomery County Jail on January 9, 2008, are not in the Health District's custody.

Clemmons presents no new physical evidence at all. The balance of his exhibits are testimonial. There are two affidavits from Janet Lasley, the victim's grandmother and Clemmons' sometime girlfriend. She says in Ex. B, dated September 3, 2009, Clemmons was not around J.T. "from January 07 to June 07." However, she initially wrote January 08 to June 08 and then wrote 7's over the 8's. She says "Greg wasn't visiting me from Feb. to Apr. because we were broke up." Then she apparently contradicts herself and says "[w]hen he was visiting me and I had to pick up [J.T., the victim] from school, I always took her over to her Aunt's house or to the park." (PageID 1033). Lasley's second affidavit is undated and avers that the rape did not happen because "Greg wasn't even around her. He was living on Ryburn and when he was coming over I never had [J.T.] around him. I went over [to] her aunt's house."

Yvette Griffin provided an undated handwritten affidavit which is at PageID 1039. She

identifies herself as Janet Lasley's daughter and avers that "[w]hen Greg was at my mothers and she had to pick up [J.T.] from school, my mother brought her over [to] my house until it was time to get [J.T.]'s mom from work.  She was never around Greg."

Exihibit K is an undated affidavit from Keisha Spears, Clemmons' daughter.  She claims the victim was coached to lie, that she grew up with the victim's mother who doesn't like her father, that there is a male child in the neighborhood who had sexual contact with the victim, that the victim's mother had known for three years that her child was being abused and did nothing about it, and that the apartment her father shared with his girlfriend Nadea[1] Gilroy at the time of the alleged crime had no door on the bathroom.  Nada Gilroy gives an undated affidavit (Ex. N) that says she lived with Clemmons at 320 Ryburn Avenue from February to April, 2007; he was with her every day from January 22, 2007, to April 18, 2007; and they had a shower curtain rather than a door separating their bedroom from their bathroom.

These affidavits are not strong evidence of innocence.  None of the affiants are disinterested. Two of them are former sexual partners of the Petitioner, one is his daughter, and one is essentially vouching for her mother.  Their testimony is conclusory:  they claim they were with Clemmons all the time for several months on end.  Some of the testimony is not competent in that it is double or triple hearsay, particularly the claims of Keisha Spears that a young male child in the neighborhood is the likely perpetrator.

In evaluating the credibility of this evidence, the Court notes that it is all hearsay untested by cross examination.  All of these witnesses and their possible testimony were known to defense counsel at the time of trial, but none were called to testify.  Indeed, several of them complain bitterly that they were rejected as witnesses by defense counsel.  In evaluating their credibility,

---
1 Spelled this way in the Spears' affidavit but as "Nada" by Ms. Gilroy herself.

some weight should be given to their rejection by experienced defense counsel who may well have known impeaching facts which would have been shown on cross-examination.

In evaluating the new evidence of actual innocence, a habeas court "must make its determination concerning the petitioner's innocence 'in light of all the evidence.'" *Schlup v. Delo*, 513 U.S. 298, 327-328 (1995), *quoting Murray v. Carrier,* 477 U.S. 478, ____ (1986).  The Montgomery County Court of Appeals on direct appeal summarized the trial testimony in deciding Clemmons insufficiency of the evidence claim:

> In order to prove rape, the State was required to prove beyond a reasonable doubt that Defendant penetrated J.T.'s vagina, however slightly. *State v. Wells,* 91 Ohio St.3d 32, 2001 Ohio 3, 740 N.E.2d 1097.  Defendant argues that his conviction for rape is not supported by sufficient evidence and is against the manifest weight of the evidence because the evidence fails to demonstrate that he penetrated J.T.'s vagina.
>
> J.T., who was age six when she testified at trial, said that one day while she was visiting her grandmother, who is Defendant's girlfriend, Defendant took her into the garbage room and closed the door. Defendant pulled J.T.'s underwear down and touched her private parts with his fingers and his "hotdog." Using anatomically correct illustrations of a male and female, J.T. demonstrated that her private part is her vagina and that Defendant's "hotdog" is his penis. J.T. testified that it hurt when Defendant touched as he did.
>
> Dr. Lori Roediger testified that her examination of J.T.'s vagina revealed a hymenal abnormality. The hymenal tissue appeared to be flush against the vaginal wall, which is indicative of prior penetrating trauma to the hymen. Although Dr. Roediger did not state as her positive opinion that there had been prior penetrating trauma to J.T.'s hymen, Dr. Roediger testified concerning her differential diagnosis, wherein she concluded that penetrating trauma is the suspected cause because J.T. has no history of the other possible causes for the hymenal abnormality she observed, including genital surgery, accidental genital trauma, or self-inflicted genital trauma.
>
> Defendant testified and denied any sexual conduct or contact with

10

J.T. of any kind.

*State v. Clemmons*, 2009-Ohio-2066, ¶¶ 16-19, 2009 Ohio App. LEXIS 1739 (Ohio App. 2nd Dist. May 1, 2009).

The evidence attached to Clemmons' Response is not so strong as to undermine the Court's confidence in the trial verdict. That is to say, this Court is not convinced that if a jury heard all the evidence, including the new evidence, that no rational juror would vote to convict of rape.

**Request for Discovery**

In his Request for Additional Discovery and Expansion of the Record (Doc. No. 8), Clemmons asserts that, if the Court will permit him more discovery and expand the record with the results, that discovery will produce strong evidence of innocence.

First of all, Petitioner requests this Court to order DNA testing of the "panties" of the victim, asserting this will produce reliable scientific evidence which will exclude him as the "contributor." Clemmons asserts he has a constitutional right to such testing under *Skinner v. Switzer*, 131 S. Ct. 1289 (2011).

*Skinner* is not as simple as Clemmons' citation makes it seem. Skinner was convicted of murder in Texas and sentenced to death. He twice unsuccessfully sought post-conviction testimony in the Texas courts. He then filed a civil rights action under 42 U.S.C. § 1983 seeking to have the federal court order testing. The Supreme Court held that the § 1983 action was not barred by the *Rooker-Feldman* doctrine because it was not an attack on the state court judgments denying testing, but on the underlying statute. The Supreme Court further held that Skinner could

11

bring his claim under § 1983 rather than in habeas corpus because success in obtaining the testing would not necessarily imply the invalidity of his conviction. The Supreme Court did not hold, that there was a constitutional right to post-conviction DNA testing. Indeed, in *District Attorney's Office v. Osborne,* 557 U.S. 52 (2009), the Court had held just two years earlier that there was no constitutional right under the Due Process Clause to post-conviction access to DNA evidence for testing. This Court is not compelled to grant DNA testing by current Supreme Court or Sixth Circuit precedent.

This Court, however, believes it has discretion to order DNA testing as part of discovery in habeas corpus cases and has previously exercised that discretion in both granting and denying DNA testing. Respondent does not deny that such discretion exists. Instead, Respondent focuses on the restrictions on evidence in support of habeas corpus claims to the state court record for those claims adjudicated on the merits by the state courts. (Respondent's Opposition to Petitioner's Request for Additional Discovery and Expansion of the Record, Doc. No. 9.)

Respondent relies principally on *Cullen v. Pinholster,* 563 U.S. ___, 131 S.Ct. 1388 (2011), where the Supreme Court held that a federal court's review of a state court decision under 28 U.S.C. § 2254(d)(1) is strictly limited to "review of the state court record," and that evidence acquired through use of an evidentiary hearing may not be considered. *Id.* at 1399. The Sixth Circuit has consistently applied *Pinholster* to preclude consideration of new evidence, whether added by evidentiary hearing or expansion of the record, in deciding the § 2254(d)(1) question. *See Bray v. Andrews,* 640 F.3d 731, 737 (6th Cir. 2011); *Henness v. Bagley*, 644 F.3d 308, 327 (6th Cir. 2011); *Bourne v. Curtin,* 666 F.3d 411 (6th Cir. 2012). This Court will apply *Pinholster* to exclude new evidence on the merits of Petitioner's claims.

12

However, *Pinholster* does not by its own terms apply to the actual innocence exception to either procedural default or the statute of limitations. The premise of the actual innocence exception is that the habeas petitioner is presenting **new** evidence not considered by the state courts. Nothing in the AEDPA purports to limit what new evidence a petitioner can present on that question.

However, there is no reason why the general habeas corpus standard for discovery should not apply to discovery sought for actual innocence purposes. A habeas petitioner is not entitled to discovery as a matter of course, but only upon a fact-specific showing of good cause and in the Court's exercise of discretion. Rule 6(a), Rules Governing §2254 Cases; *Bracy v. Gramley*, 520 U.S. 899 (1997); *Harris v. Nelson*, 394 U.S. 286 (1969); *Byrd v. Collins*, 209 F.3d 486, 515-16 (6th Cir. 2000).

Before determining whether discovery is warranted, the Court must first identify the essential elements of the claim on which discovery is sought. *Bracy*, 520 U.S. at 904, *citing United States v. Armstrong*, 517 U.S. 456, 468 (1996). The burden of demonstrating the materiality of the information requested is on the moving party. *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001), *cert. denied,* 537 U.S. 831 (2002), *citing Murphy v. Johnson,* 205 F. 3d 809, 813-15 (5th Cir. 2000). "Even in a death penalty case, 'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or require an evidentiary hearing.'" *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003), *cert. denied,* 543 U.S. 842 (2004), *quoting Stanford*, 266 F.3d at 460. Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Williams v. Bagley,* 380 F.3d 932, 974, (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005), *citing Rector v. Johnson*, 120 F.3d

13

551, 562 (5th Cir. 1997); *see also Stanford*, 266 F.3d at 460. "Conclusory allegations are not enough to warrant discovery under [Rule 6]; the petitioner must set forth specific allegations of fact." *Williams,* 380 F.3d at 974, *citing Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

As noted above, Clemmons sought DNA testing in the Ohio courts of the victim's panties when she was taken to the hospital May 23, 2007.  In affirming denial of that request, the Court of Appeals held as follows:

> On August 24, 2010, appellant filed an application for DNA testing. In his application, he claimed he did not have any sexually transmitted diseases, but that the victim, J.T., [Footnote omitted] was treated for a sexually transmitted disease when she received medical treatment a few weeks after the incidence of sexual abuse. He argued that he could not have been the perpetrator and that a DNA test of the milky green discharge found in the victim's underwear would prove his innocence. He also made various other arguments about ineffective assistance of counsel and violations of his right to confront witnesses against him and attached various documents to his application.
>
> The trial court dismissed appellant's arguments attacking his conviction and focused solely on the information related to his application for DNA testing. The court then determined from the testimony adduced at trial that no "evidence was obtained from any source which contained the DNA of the alleged perpetrator of the offense." The underwear collected did not contain any DNA from the perpetrator because the incident had occurred in the weeks prior to the victim's hospital examination.
>
> * * *
>
> Here, appellant's application requested the testing of a green substance found in the victim's underwear for sexually transmitted diseases. Appellant is under the mistaken belief that the victim was treated for such a disease. However, even if this were the case, appellant has failed to identify any material or evidence that could be tested for the presence of the perpetrator's DNA.
>
> Hospital staff who examined the victim for signs of sexual abuse found that she had a urinary tract infection and that she had

> previously been prescribed antibiotics. She was tested for the presence of sexually transmitted diseases, but none were found. The evidence adduced at trial reveals that the victim was never diagnosed or treated for a sexually transmitted disease, as appellant claims.
>
> In a well reasoned and thorough opinion, the trial court found that, "even if the court were to accept his arguments as true, the presence or absence of sexually transmitted diseases would not be outcome determinative, since J.T. did not test positive for any sexually transmitted disease * * *. [Appellant's] argument simply ignores the uncontroverted testimony at trial that the child did not suffer from any sexually transmitted disease * * *."
>
> Where the requested testing would not be outcome determinative, the court may deny the application without further analysis. *State v. Buehler,* 113 Ohio St. 3d 114, 2007 Ohio 1246, ¶30-34, 863 N.E.2d 124. "Outcome determinative" is defined to mean that, "had the results of DNA testing been presented at the trial of the subject inmate requesting DNA testing * * * and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case as described in division (D) of section 2953.74 of the Revised Code, there is a strong probability that no reasonable factfinder would have found the inmate guilty of that offense * * *." R.C. 2953.71(L).
>
> Here, the trial court's decision that the testing of green discharge found in the underwear of the victim would not produce evidence that is outcome determinative is supported in the record. This biological sample does not contain genetic material of the perpetrator, and any test would not exclude appellant even if his arguments were correct. This conclusion, and the denial of appellant's application for DNA testing, was not an abuse of the trial court's discretion. Therefore, appellant's sole assignment of error is overruled, and the judgment of the trial court is affirmed.

*State v. Clemmons*, No. 24377, 2011-Ohio-4447, ¶¶ 3-4, 14-18, 2011 Ohio App. LEXIS 3694 (Ohio App. 2nd Dist. Sept. 2, 2011).

Thus the question of whether DNA testing of the victim's panties would produce evidence that Clemmons is actually innocent has been fully litigated to judgment in a case in which

15

Clemmons was a party. 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Under §2254(e)(1), a state court's findings of fact are presumed correct and may be rebutted by the petitioner only by clear and convincing evidence to the contrary. *Cornwell v. Bradshaw*, 559 F.3d 398, 405 (6th Cir. 2009); *Mitchell v. Mason,* 325 F.3d 732, 737-38 (6th Cir. 2003); *Warren v. Smith,* 161 F.3d 358, 360-61 (6th Cir. 1998). This statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Girts v. Yanai,* 501 F.3d 743, 749 (6th Cir. 2007); *Mason v. Mitchell,* 320 F.3d 604, 614 (6th Cir. 2003); *Brumley v. Wingard,* 269 F.3d 629, 637 (6th Cir. 2001), citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981).

Nothing Clemmons has presented overcomes this presumption of correctness. The victim went to the hospital several weeks or months after the sexual assault. Why would she be wearing the same panties then as she did when she was raped? Would they not have been washed in between? Why does Clemmons believe they would continue to contain DNA from the rapist? Conversely, the fact that his DNA is not there proves nothing. Clemmons' request for DNA testing of the panties is denied.

Clemmons seeks discovery of the laboratory reports on analysis of the greenish discharge. According to the Care Clinic Outpatient Consultation (Ex. A to Doc. No. 11), the victim's mother told the social worker, Ms. Pitstick, that Miami Valley Hospital did a vaginal culture and a

urinalysis, and then treated J.T. for a urinary tract infection. *Id.* at PageID 1029. The treatment worked – the urinary tract infection was already improving when the forensic interview happened several days later. Clemmons does not explain how the results of these diagnostic tests would support his claim of actual innocence. His request for those reports is denied.

Clemmons seeks discovery of his own medical records from the Drew Health Center (Motion, Doc. No. 8, PageID 910). Presumably these are the records which would show negative AIDS testing, although that is not explained. Again, these records may prove a negative – that at whatever time Clemmons tested negative for HIV – but they are not relevant to prove his innocence because there is no proof that the perpetrator was HIV positive.

Clemmons seeks to discover records of STD testing he underwent in the Montgomery County Jail on January 9, 2008, "to compare the results to the alleged victim's STD testing." *Id.* These records are irrelevant to Clemmons' claim of actual innocence for the same reasons as the Drew Health Center records, and discovery of them is denied.

Lastly, Clemmons seeks a copy of the transcript of the forensic interview done of the victim at the Care Center on May 24, 2007. He offers no reason to believe that the transcript will show anything different from what the participants in or witnesses to that interview testified to in open court. Furthermore, the contents of that interview are not new evidence because they have already been presented to the state courts. The request to discover the transcript is denied.

**Expansion of the Record**

In addition to seeking discovery, Clemmons asks that the record be expanded to include

more of the documents filed in the state courts, to wit, his application for post-conviction DNA testing and motion to reconsider the denial, his appellate brief, Judge Huffman's entry finding the victim competent to testify and a transcript of the proceeding she conducted to arrive at that conclusion, a motion in limine filed by the prosecutor, Clemmons' own motion to compel, the original criminal complaint with supporting probable cause affidavit and police arrest reports, and Clemmons' motion to suppress (Motion, Doc. No. 11, PageID 911-912).  Respondent makes no objection, notes that some of these documents are already part of the record, and supplies the rest, certifying they have been served on Petitioner (Respondent's Opposition, Doc. No. 9, PageID 922-926).  The request to expand the record is granted, except that the police reports and original complaint and probable cause affidavit are denied because their impact on the case is superseded by the subsequent grand jury indictment and trial verdict.

## Conclusion

Petitioner's Motion for Discovery is denied; his Motion to Expand the Record is granted in part and denied in part.

In accordance with the foregoing analysis, it is respectfully recommended that the respondent's Motion to Dismiss be granted and the Petition herein dismissed with prejudice as barred by the statute of limitations.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that

the Court certify to the Sixth Circuit that any appeal would be objectively frivolous.

October 10, 2012.

s/ *Michael R. Merz*<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).